IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | : | |
|---|---|---|
| **KATHRYN POLLARD,** | : | Case No. C2-11-CV-0286 |
| | : | |
| Plaintiff, | : | JUDGE ALGENON L. MARBLEY |
| | : | |
| v. | : | Magistrate Judge Preston Deavers |
| | : | |
| **THE CITY OF COLUMBUS, OHIO,** *et al.*, | : | |
| | : | |
| Defendants. | : | |

## **OPINION & ORDER**

### I.     INTRODUCTION

This matter is before the Court on Plaintiff's Motion for Sanctions Due to Defendant's Destruction of Evidence (the "Motion") (Doc. 37).  Plaintiff, Kathryn Pollard, brings suit to recover for alleged violations of the Constitution and Ohio law related to the killing of her son, Abram Bynum, by officers of the Columbus Police Department (CPD).  In this motion for sanctions, Plaintiff alleges that Defendants destroyed the 1994 white Cadillac driven by Mr. Bynum, a key piece of evidence in Plaintiff's case.  For the reasons set forth herein, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

### II.     BACKGROUND

This case concerns the death of Abram Bynum, who was killed after a high-speed police chase in Columbus in 2009.[1]  At that time, Bynum had become a suspect in a series of sexual assaults perpetrated in California, and the Columbus Police Department ("CPD"), at the behest of the Los Angeles County Sheriff's Department, began surveillance of Bynum, including

---

[1] Given the nature of this motion, and the considerable briefing already filed, the Court focuses its narrative on those facts most relevant to the evidentiary value of Mr. Bynum's Cadillac, and the events that preceded its destruction. In large part, the facts set forth here draw from the Court's recent factual statement in its Order regarding Defendants' Motion for Summary Judgment (Doc. 66).

surveillance conducted by officers in unmarked police vehicles. On July 7, 2009, CPD officers followed Bynum throughout the day. That afternoon, however, Bynum and his twin brother Aaron each left Aaron Bynum's house, in separate vehicles, and CPD officers followed both men. Four unmarked police cars, including those driven by several Defendants, followed Bynum's 1994 white Cadillac. The officers activated their lights and sirens and signaled for Bynum to pull over; instead, Bynum accelerated, initiating a pursuit by CPD officers.

At approximately 3:55 pm, Bynum entered Interstate I-70 East, with unmarked cars as well as a CPD helicopter pursuing him. He drove at excessive speeds, weaving through traffic, and eventually crossing the median into the westbound lanes. Bynum's Cadillac collided head-on with a semi-truck, coming to a stop on the inside shoulder of the westbound lanes. The car was severely damaged, with the front end impacted, and the hood jammed at an upward incline.

The pursuing vehicles stopped near the Cadillac, and a number of officers approached it. Defendant Amstutz parked his cruiser roughly 25 meters from the Cadillac, facing its front. The cruiser's dashboard camera recorded the following incident. At 3:59:22 p.m., a message on Channel 2 Radio informed the officers that Bynum held a concealed carry weapon ("CCW") permit. That information was later discovered to be erroneous; only Aaron Bynum possessed a CCW permit. Amstutz approached the driver-side window, which had shattered, and radioed that Abram Bynum appeared to be unconscious. The subsequent autopsy found that Bynum had suffered a number of injuries as a result of the crash, including: a fractured clavicle; a fractured sternum; multiple rib fractures; and abrasions to the head.

The video from Cruiser #91 shows that Defendant Estepp and Officer Kinney reached the Cadillac seconds prior to Amstutz. Amstutz crossed to the opposite shoulder in order to check on the driver of the semi-truck. Kinney attempted to open the passenger door of the Cadillac and

2

reached inside the vehicle.  Estepp attempted to open the driver-side door and also reached inside the vehicle.  Defendants Yinger and O'Donnell also approached the vehicle from the driver-side, stopping roughly ten feet distant.  Defendant E. Edwards entered the frame of the cruiser video behind Yinger and O'Donnell.

At 3:59:52 p.m., Abram Bynum apparently moved, in response to which the five officers around the Cadillac jumped and backed off the car.  Although Defendants' accounts differ somewhat, they agree that more than one officer yelled some form of command for Abram Bynum to show his hands.  By 4:00:03 p.m., four officers (Kinney, Estepp, Yinger, and O'Donnell) stood in a rough semicircle approximately ten to fifteen feet from the Cadillac.  At 4:00:05 p.m. three officers, Estepp, Yinger, and O'Donnell, began firing into the Cadillac.  Shooting stopped three seconds later.  Defendant Estepp stated that prior to firing he saw that Abram Bynum "appeared to be reaching for something on the floorboard of the car" before "[Bynum] swung his hands toward the plain clothes officers." (*Estepp Affidavit*, Doc. 33-8 at 4.)  Defendant O'Donnell, however, stated that Bynum twice appeared to be reaching "for something near the rear waistband of his pants" in addition to reaching for the floor.  (*O'Donnell Affidavit*, Doc. 33-5 at 6.)  He also stated that he saw Bynum holding a "dark object." (*Id*.)  Although the details of Defendants' accounts differ, all state that Bynum moved his arms in some way prior to the shooting.

When the first volley ended, Defendants E. Edwards, W. Edwards and Amstutz had arrived within approximately 20 feet of the driver-side of the Cadillac.  Defendant Amstutz had returned to the scene when he heard the first volley.  Amstutz also stated that he saw Bynum "with his right hand reaching down towards under his seat, towards his right leg, and then bringing it up as if he had a – as if he had a weapon." (Doc. 33-13 at 7.)  The second volley

3

began at 4:00:20 p.m. with four officers, Defendants Yinger, Amstutz, E. Edwards, and W. Edwards, firing. No one attempted to communicate with Bynum between the first and second volleys.

In total, Defendants fired 80 shots at the Cadillac, 23 of which struck Bynum. Bynum died at the scene of the shooting. Following his death, the Cadillac was towed to the Franklin County Coroner's Office. The doors of his vehicle could not be opened, and were manually removed in order to extract Bynum's body. Plaintiffs filed this suit against all six officers who fired at Bynum – Estepp, Yinger, O'Donnell, Amstutz, E. Edwards, and W. Edwards. Plaintiffs also sued the City of Columbus.

Prior to Plaintiff's filing of this suit, attorneys for Bynum's family sent a letter to the City Attorney for the City of Columbus, informing him of the investigation into the circumstances of Bynum's death, and asking him to order the City and the CPD to preserve "any paper or electronic files and any data," as well as "voice mail, video tape, dash board video, cruiser video or tape recordings." (*Plaintiff's Motion for Sanctions*, Ex. A, Doc. 37-1, at 1). This letter was forwarded to the CPD. (*Id.*, Ex. C, Doc. 37-3). It is undisputed that the City placed some form of "hold" on the Cadillac in the second half of 2009. (*Id.*, Ex. N, Doc. 40-18).

The City continued to hold the vehicle through 2010 and 2011. At that time, the vehicle was stored at the City Impound Lot, where it was to be released only at the direction of the detectives handling the case. (*See Defendant's Response to Plaintiff's Motion for Sanctions*, Doc. 40, at 17; *id.*, Ex. M, Doc. 40-17). Throughout 2010, the Impound Lot sent disposition forms to the handling detectives, inquiring as to the status of the Cadillac, and each time was ordered to continue to hold the vehicle.

4

By December 2011, however, three officers – Detectives Bisutti and McCoskey, and Sergeant Sacksteder – who had been involved with the Bynum investigation had retired. According to Defendants, when the Impound Lot sent another disposition form to Detective Eppert, who was not aware of the civil case, he checked with his supervisor, Sergeant Pilya, and was directed to inform the Impound Lot that a "vehicle hold was no longer needed." (*Id.* at 17-18; *id.*, Ex. O, Doc. 40-19). Once the hold was lifted, the Impound Lot, following its standard procedure, authorized the vehicle to be released. The Impound Lot attempted to contact Bynum and, when it learned that he was deceased, sent a certified letter to his last known address. (*Id.*, Ex. P, Doc.40-20). It is not clear whether Plaintiff received the letter, and indeed the certified mail receipt was returned "unclaimed, unable to forward." (*Id.*, Ex Q, Doc. 40-21). After receiving this receipt, the Cadillac was removed and sent for destruction on March 8, 2012 (*Id.*, Ex. R, Doc. 40-22).

Plaintiff has moved for sanctions due to Defendants' destruction of evidence. (Doc. 37). Plaintiff requests that sanctions take the form of an order for partial summary judgment on the issue of Defendants' liability. The Motion has been fully briefed, and is ripe for review.

### III.   LEGAL STANDARD

A district court may sanction a litigant for spoliation of evidence if three conditions are met:  (1) "the party with control over the evidence must have had an obligation to preserve it at the time it was destroyed"; (2) the party "must have destroyed the evidence with a culpable state of mind"; and (3) the destroyed evidence "must be relevant to the other side's claim or defense."

*Byrd v. Alpha Alliance Ins. Corp.*, 518 F. App'x 380, 383-84 (6th Cir. 2013).[2]  The party seeking sanctions bears the burden of proof in establishing these facts.  *Id.* at 384.

An obligation to preserve evidence arises "when a party should have known that the evidence may be relevant to future litigation."  *Beaven v. United States Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010).

To prove a "culpable state of mind," a party must demonstrate that the alleged spoliator "destroyed the evidence knowingly or negligently."  *Byrd*, 518 F. App'x at 384.  A culpable state of mind, the Sixth Circuit has explained, "depends on the alleged spoliator's mental state regarding any obligation to preserve evidence and the subsequent destruction."  *Beaven*, 622 F.3d at 553.  This factor may be satisfied by a showing that the evidence was "destroyed knowingly, even if without intent to breach a duty to preserve it," but "even negligent conduct may suffice to warrant spoliation sanctions under appropriate circumstances."  *Stocker v. United States*, 705 F.3d 225, 235 (6th Cir. 2013) (internal quotation omitted).  Because spoliation may fall along a continuum of fault, ranging from innocence to intentionality, the degree of fault found should inform the severity of the sanctions imposed.  *Adkins v. Wolever*, 554 F.3d 650, 652-53 (6th Cir. 2009) (en banc).

Finally, the Sixth Circuit has explained that evidence is "relevant" to a party's claim or defense if the evidence is "such that a reasonable trier of fact could find that it would support that claim or defense."  *Beaven*, 622 F.3d at 553 (internal quotation omitted).  The moving party must make "some showing indicating that the destroyed evidence would have been relevant to a

---

[2] Federal law governs spoliation issues in a case pending in federal court.  *Adkins v. Wolever*, 554 F.3d 650, 651 (6th Cir. 2009).

contest issue." *Id.* at 554 (internal quotation omitted).  A district court "can consider circumstantial evidence in analyzing the import or specifics of the destroyed evidence." *Byrd*, 518 F. App'x at 385.

## IV.   ANALYSIS

Plaintiff has brought this motion against all Defendants in this case, which include both the City of Columbus ("the City") as well as the individual police officers involved in Bynum's death (the "Individual Defendants"), sued in both their personal and official capacities.  (*See Complaint*, Doc. 2, at ¶¶ 8-9).

### A.  Individual Defendants

As Defendants correctly point out, Plaintiff has made no allegations that the Individual Defendants had custody or control over the Cadillac.  As stated by the Defendants in their Response, and uncontested by Plaintiff, the vehicle was in the custody of the City Impound Lot for several years, and remained so up until the time it was destroyed.  (Doc. 40 at 16-18).  While it is true, as Defendants admit, that the Impound Lot would only release the vehicle "at the directive of detectives handling the incident which caused the hold to be placed," (*id.* at 17), there are no allegations that the Individual Defendants, i.e. Officers Amstutz, Edwards, E., Edwards, W., Estepp, O'Donnell, and Yinger, had any participation in the handling or disposal of the Cadillac.  At most, it may be that the officers and detectives responsible for answering the hold letters from the Impound Lot, and for ultimately informing the Impound Lot that a hold was no longer needed, could be found to have constructive control of the vehicle.  But the Individual Defendants did not have such responsibility.

Accordingly, Plaintiff's Motion is **DENIED** as to the Individual Defendants.

### B. City of Columbus

Plaintiff also requests sanctions against Defendant City of Columbus.

#### 1. Duty to Preserve

All parties appear to agree that the City had "control over the evidence" at the time of the alleged spoliation. Defendants' Response presents no evidence that the vehicle was ever under the control of any other party. Rather, it was transferred from the Columbus Police Department to the City Impound Lot, from which only a CPD detective handling the incident could release it. (*Defendant's Response*, Doc. 40, at 16-17). When the vehicle was ultimately scrapped, it was sent to Columbus Auto Shredding, Inc., by the City. (*See id.*, Ex. R, Doc. 40-22).

Moreover, Defendants, including the City, were under a duty to preserve all relevant evidence at least by the time the Cadillac was destroyed in March 2012. Plaintiff's counsel informed the City via letter on July 28, 2009, that his office had "been engaged by the family of [Bynum] to review the circumstances surrounding the July 7, 2009 fatal shooting," and requesting that the City preserve "any paper or electronic files and other data generated and/or stored on their computers and storage media." (*Defendants' Response*, Ex. G, Doc. 40-14, at 1). While the letter does not specifically reference physical evidence, such as the Cadillac, that is not required to create an "obligation to preserve." Rather, all that is required is that a party know, or "should have known" that the evidence "may be relevant" to "future litigation." *Beaven*, 662 F.3d at 553. That showing has been met here.

#### 2. Culpable State of Mind

The Court finds that the City destroyed the Cadillac with a culpable state of mind. A party's stated reason for destroying a piece of evidence is an issue of credibility for the Court to

decide. *Id.* at 553-54. The City has argued that the destruction of the Cadillac is the result of a "mistake," without "any intention to deprive Plaintiff of evidence." (Doc. 40 at 18, 20). Such intention, or lack thereof, does not absolve the City. "Knowing" destruction, even without intent to breach a duty to preserve, suffices to establish spoliation. *Stocker*, 705 F.3d at 235.

Moreover, even if the City did not knowingly destroy the vehicle, the City acted negligently in its care and custody of it. The evidence presented to the Court has demonstrated that the City failed to take reasonable steps to ensure the vehicle's preservation. The Court has seen no evidence of a general litigation hold, or memorandum to City employees explaining their duty to preserve key evidence. Defendants do not even allege that such instructions were issued, and can muster only the paltry assurance that there have been certain internal "oral and written attorney-client communications" and that the City has "attempt[ed] to preserve *all* evidence related to this litigation." (Doc. 40 at 16) (emphasis in original). After the retirement from the CPD of certain officers involved in this case, the City did not take steps to brief new officers to ensure the retention of relevant evidence, with the result that Detective Eppert and Sergeant Pilya were unaware of any reason to continue to hold the Cadillac at the Impound Lot. (*Id.* at 18).

Additionally, the City's claim that it did not act with a culpable mind in destroying the Cadillac because the CPD merely "directed that the hold be lifted or released," but did not actively order the vehicle to be destroyed, is unconvincing. The City was under an obligation to preserve the evidence, not merely *not* to destroy it. *Arch Ins. Co. v. Broan–Nutone, LLC*, No. 09–319,2011 WL 3880514 (E.D. Ky. Aug. 31, 2011), *aff'd*, 2012 WL 6634323 (6th Cir. Dec. 21, 2012) (approving sanctions for destruction of evidence and finding affirmative duty to preserve evidence in the custody of a third party).

9

*3. Relevance of Evidence*

Finally, the vehicle was relevant to Plaintiff's claims. Taking all the evidence before it, the Court is satisfied that Plaintiff has made "some showing" indicating that the evidence would have been "relevant" to a contested issue. *Beaven*, 622 F.3d at 553. A reasonable trier of fact could find that an opportunity to further examine and inspect the vehicle itself would support the claims asserted by the Plaintiff.

Although Defendants have exhaustively listed alternative sources of evidence that the Plaintiff might employ in its case, that is not the proper inquiry. Rather, Circuit precedent requires only that the evidence be "relevant" to a claim or defense. *See Beaven*, 622 F.3d at 553; *Byrd*, 518 F. App'x at 385. Plaintiff has suggested a number of ways in which the actual vehicle would be relevant to its arguments. (*See Motion*, Doc. 37, at 14-15). Whether these arguments will convince a jury of the Defendants' ultimate liability is not before the Court. But Plaintiff has established that the Cadillac is relevant.

**C. Appropriate Sanctions**

Having determined that spoliation occurred, the Court must now craft an appropriate sanction. A district court has in its "inherent powers" the broad discretion to create proper sanctions for spoliation, "'including dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence.'" *Owner–Operator Indep. Drivers Ass'n v. Comerica Bank*, 860 F.Supp.2d 519, 537–38 (S.D. Ohio 2012) (quoting *Adkins*, 554 F.3d at 651, 653). Nevertheless, the sanction must "serve both fairness and punitive functions." *Arch Insurance Co. v. Broan–Nutone, LLC*, No. 11–6221, 509 F. App'x. 453, 457

(6th Cir. Dec. 21, 2012) (citation omitted).  In addition, sanctions should have some correlation to the degree of fault.  *Adkins*, 554 F.3d at 652-53.

Plaintiff has requested a judgment of liability be entered against Defendants.  In general, a dispositive sanction "should rarely be imposed and only when significant prejudice results from the evidence's destruction." *Byrd*, 518 F. App'x at 386.  Such a sanction is usually justified only in circumstances of bad faith or other like action, or if the prejudice to the defendant is extraordinary, denying it the ability to adequately defend its case.  *Id.* at 386 (citing *Silvestri v. General Motors Corp.*, 271 F.3d 583, 593 (4th Cir.2001)).

In this instance, a judgment of liability is unwarranted.  While Plaintiff has established that spoliation occurred, and that she would suffer some prejudice, this is not the sort of case where "significant" or "extraordinary" prejudice has resulted, or where the Defendants acted in bad faith.  *Cf. Beaven*, 622 F.3d at 555 (where the intentional "destruction of [documents] severely compromised the Plaintiffs' case by depriving the Plaintiffs of the most relevant piece of evidence to prove their claims.").  Plaintiff is not without evidence to prove her claims, considering the hundreds of pictures taken, detailed reports of the state of the vehicle and the decedent, and video evidence from the cruiser dashboard camera.  Given the degree of prejudice to the Plaintiff, a finding of liability would be unfairly punitive.

Instead, an instruction that the jury may draw an adverse inference from the destruction of the Cadillac more properly serves the dual objectives of fairness and punishment.  The City had complete authority and control over the vehicle when it was destroyed.  *Cf. Adkins*, 692 F.3d at 506 (declining to impose an adverse inference instruction where the offending party "was not culpable because he had no control over the evidence.").  The City acted with considerable negligence, if not intention, when it lifted the hold on the vehicle and allowed it to be destroyed.

11

*Compare Owner-Operator Indep. Divers Ass'n*, 860 F. Supp. 2d at 541 (finding no evidence of bad faith in the destruction of certain documents, but imposing, in light of the party's culpable negligence, several adverse inferences of fact).  And the evidence is relevant to a claim made by the Plaintiff.  (*See, e.g.*, *Complaint*, Doc. 2, ¶¶ 50-52).  Given this spoliation by the City, and in light of its culpability, an adverse inference instruction is justified.

## V.     CONCLUSION

For the reasons stated above, Plaintiff has failed to prove spoliation of evidence by the Individuals Defendants.  Thus, the Motion for Sanctions is hereby **DENIED** with respect to those defendants.  However, Plaintiff has succeeded in establishing spoliation by the City of Columbus.  Accordingly, the Motion for Sanctions is hereby **GRANTED** with respect to the City.  Plaintiff's request for a grant of summary judgment is **DENIED**.  The Court hereby **ORDERS** that an adverse inference instruction against Defendant City of Columbus will be given at trial.

**IT IS SO ORDERED.**

                                               s/ Algenon L. Marbley
                                               **ALGENON L. MARBLEY**
                                               **UNITED STATES DISTRICT JUDGE**

**DATED: September 23, 2013**